**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

| | |
|---|---|
| **JOHN R. RICHARDSON** | **PLAINTIFF** |
| **COMMERCE AND INDUSTRY INSURANCE COMPANY** | **INTERVENOR PLAINTIFF** |
| **v.** | **CAUSE NO. 4:11-CV-128-CWR-LRA** |
| **PETCO PETROLEUM CORPORATION; JOHN DOES 1-5** | **DEFENDANTS** |

**ORDER**

Before the Court is the defendant's motion for summary judgment. Docket No. 37. The plaintiff has responded, the defendant has replied, and the matter is ready for review. The motion will be granted in part and denied in part.

*I.    Factual and Procedural History*

On September 17, 2008, John Richardson was a roustabout employed by RK Services, LLC.[1] Docket No. 3, at 3. He was assigned to work at an oil well operated by Petco Petroleum. *Id.* That day, Petco's employees directed him to repair equipment that contained "super heated water," but did not shut down the system or remove the hot water. *Id.* at 3-4. As a result, Richardson suffered severe burns. *Id.* at 4.

In August 2011, Richardson brought this suit against Petco. Docket No. 1. He sought compensatory and punitive damages, asserting negligence and premises liability theories. Docket No. 3, at 4-6.

*II.    Present Arguments*

Petco first argues that it owed no duty to Richardson since he was an employee of an independent contractor, RK Services. Docket No. 38, at 3-11. The owner of RK Services was on the scene and made the decisions resulting in Richardson's injuries, Petco claims. *Id.* at 4-6. It next contends that even if it had a duty, it is not liable because RK Services and Richardson were aware of the dangers associated with the repair in question. *Id.* at 11-15.

---

[1] A roustabout is a general laborer – the "low man on the totem pole," as one witness put it. Docket No. 43-3, at 14. He is supervised by a "pumper." *Id.*

In response, Richardson claims that he was treated as an employee, not an independent contractor. Docket No. 44, at 8-24. Petco's supervisor identified the problem, directed a team of RK Services and Petco employees to fix it, and told them how to complete the repair, he says. *Id.* at 18-21, 24. Richardson asserts that RK Services was functionally a pool of employee labor, since it did whatever Petco requested and regularly used Petco's equipment and employees. *Id.* at 13-17. As a result, he claims, a jury must determine whether he was an employee that was owed a duty of care. *Id.* at 29-33. Richardson contends that he was not warned about the dangers, and that in any event that defense goes to his premises liability claim only and not his negligence claim. *Id.* at 26-29, 33-34.

Petco's rebuttal reurges its argument that Richardson took direction only from the owner of RK Services, who was the sole person authorized to direct RK Services employees and who decided how to make the repair in question. Docket No. 44, at 1-2. It maintains that Richardson knew the water was hot or warm. *Id.* at 5.

III.  *Standard of Review*

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1). The Court views the evidence and draws reasonable inferences in the light most favorable to the non-movant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011).

IV.  *Discussion*

    A.    Duty

"Although an owner is not liable for injuries sustained by an employee of an independent contractor, caused by the negligence of such independent contractor, an owner is liable to employees of an independent contractor for his own negligence." *Coho Resources, Inc. v. McCarthy*, 829 So. 2d 1, 13 (Miss. 2002) (citation omitted). "While the general rule is that the owner of the premises does not have a duty to protect an independent contractor against risks arising from or intimately connected with the work, there is an exception where the owner maintains substantial de jure or de facto control over the work to be performed." *Id.*

The Mississippi Supreme Court has defined "independent contractor" as "a person who

2

contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking." *Richardson v. APAC-Mississippi, Inc.*, 631 So. 2d 143, 148 (Miss. 1994) (quotation marks and citations omitted). Citing cases as far back as 1931, that court acknowledged that it "can be difficult" to determine whether a person is an independent contractor, but that "it gets back to the original proposition whether in fact the contractor was actually independent." *Id.* (citation omitted).

> There are several tests to be applied, the weight of each, and whether much or little, rising and falling in the scale as it may or may not be counterbalanced by one or more of the remaining tests, present in the particular case in hand. For this reason these tests cannot be stated in any precise order of importance, but they are as follows: Whether the principal master has the power to terminate the contract at will; whether he has the power to fix the price in payment for the work, or vitally controls the manner and time of payment; whether he furnishes the means and appliances for the work; whether he has control of the premises; whether he furnishes the materials upon which the work is done and receives the output thereof, the contractor dealing with no other person in respect to the output; whether he has the right to prescribe and furnish the details of the kind and character of work to be done; whether he has the right to supervise and inspect the work during the course of the employment; whether he has the right to direct the details of the manner in which the work is to be done; whether he has the right to employ and discharge the subemployees and to fix their compensation; and whether he is obliged to pay the wages of said employees.

*Id.* at 148-49 (citation omitted).[2]

The court then added another factor to consider: whether "public policy should permit the transformation of an ordinarily employer/employee relationship into that of an independent contractor" when third parties are adversely affected and denied an adequate legal remedy. *Id.* at 150. "In essence, an employer will not be allowed to escape liability by drafting a contract which labels its employee an independent contractor, but retains employer-like control over him." *McKee*

---

[2] The Fifth Circuit has explained how this law developed:

> In *W.J. Runyon & Son, Inc. v. Davis*, 605 So. 2d 38 (Miss. 1992), the Mississippi [Supreme] [C]ourt moved to a singular 'right to control' test. However, in *Richardson v. APAC-Mississippi, Inc.*, 631 So. 2d 143 (Miss. 1994), the court overruled *Runyon* to the extent that it was inconsistent with *Richardson* and moved back to a factoring analysis. Through all the changes, the right to control and actual control have always been primary factors.

*McKee v. Brimmer*, 39 F.3d 94, 96 (5th Cir. 1994).

3

*v. Brimmer*, 39 F.3d 94, 98 (5th Cir. 1994).

Where the facts are disputed, the question of a person's status – employee or independent contractor – is to be resolved by a jury. *McCarthy*, 829 So. 2d at 13.

In our case, the available evidence shows a factual dispute as to whether RK Services was truly an independent contractor.

For its part, Petco has pointed to excerpts from the deposition of Rod McClain, the owner of RK Services, who testified, among other things, that he decided how to complete the repair and that he explained to other workers how the repair process was going to take place. Docket No. 37-1, at 11-14.[3]

McClain's version of events, though, was disputed by Jonathan Hudson, one of Petco's pumpers. Hudson stated in a deposition that on the date of Richardson's injury, Hudson identified the leak that needed repairing. Docket No. 43-1, at 26. He explained, "we gathered everybody up and told them the problem we had and what we had to do to fix it." *Id.* at 27. The team consisted of three of Petco's employees and three of RK Services' employees. *Id.* at 24-25. The deposition continued as follows:

> Q. What did you tell them?
> A. Pointed out the leak to them and told them what the process was and what we had to do to correct it.
> Q. What did you tell them that process was?
> A. We had to hook the vacuum truck to the top of the separator and start pulling the vacuum, wait until we got the vacuum pulled on it, and then take the fitting out and put the new one in.

*Id.*

---

[3] McClain later testified that he did whatever he was instructed to do by Petco's on-site pumpers, including pumper John Hudson. Docket No. 37-1, at 16. Although that statement is in some tension with McClain's prior testimony that he (McClain) was the decision maker, it could mean that McClain took instructions from pumpers on projects other than the specific one that led to Richardson's injuries. This can be explored at trial.
 The ambiguity was not limited to McClain's testimony. Richardson was not clear as to who controlled his own work. He testified that Hudson instructed him to perform the repair procedure, told the team what had to be done, and was in charge of the oil field. Docket No. 43-4, at 64-65, 75. But Richardson could not recall who gave the specific instructions during the procedure – more likely McClain, he said later – and agreed with the general proposition that McClain was his immediate boss who he looked to for directions and instructions. *Id.* at 73-75. *Much* later in the deposition, however, under examination by his own attorney, Richardson testified that Petco's employees controlled his work and determined the process that was utilized for the repair procedure in question. *Id.* at 103. A jury will have to resolve these inconsistencies.

Hudson continued to instruct the workers on how to complete the repair. *Id.* at 35, 40-41. During the procedure, the vacuum truck lost suction, causing hot water to spill and burn Richardson. *Id.* at 36-39, 43-46. When suction was reestablished, the repair procedure was completed. *Id.* at 52. Hudson then directed the workers to disconnect the vacuum truck and restart the well. *Id.* at 53-54.

Hudson admitted that there was an alternate procedure he could have used to repair the machinery without risk of burning a team member, but that it would have taken substantially longer. *Id.* at 54-56. He again confirmed, however, that he had chosen the repair procedure, thereby contradicting McClain's testimony. *Id.* at 55-57.[4]

Hudson also agreed that he directed RK Services and its employees – who followed his directives, he said – and stated that had the right to stop their work if he did not like what they were doing. *Id.* at 69-71. This is contrary to McClain's testimony that employees of RK Services were not expected to follow instructions from Petco's employees and were instead expected to follow McClain's orders. Docket No. 37-1, at 19.

The dispute extends beyond issues of control. It is not clear whether RK Services performed the kind of specialized work that often goes hand-in-hand with an independent contractor's right to control how they complete the job. For example, McClain stated that RK Services was hired to perform general, "preventible maintenance," including "everyday upkeep, housecleaning," and other tasks. *Id.* at 6, 21. It also is relevant that the tools used during the repair procedure belonged to Petco, not RK Services; that Petco paid RK Services by the hour, instead of on a project basis; and that there was no written contract expressly setting out the terms of an independent contractor relationship. Docket Nos. 43-1, at 29; 43-2, at 36-37; 43-5, at 2-4, 9; *see also Magee v. Transcon. Gas Pipe Line Corp.*, 551 So. 2d 182, 185-86 (Miss. 1989) (affirming summary judgment for an independent contractor by looking to the contract terms and the ownership of the relevant tools, among other factors); *Int'l Paper Co. v. Townsend*, 961 So. 2d 741, 749 (Miss. Ct. App. 2007) ("Control is shown by the 'undisputed language of the contract' between the premises owner and the independent contractor.") (citation omitted). In short, several factors customarily associated with the independent contractor relationship are not present here.

---

[4] Another Petco employee's testimony suggested that the repair proceeded almost as a collaboration, where "we were all in agreement that that's what we were going to do." Docket No. 43-2, at 33, 39.

Our case has similarities with *McCarthy*. There, the evidence at trial showed that the defendant "retained substantial de facto control" over the workers, who had to follow the employer's step-by-step procedures in completing tasks; were paid by the hour instead of for a completed project; and were ultimately controlled by the employer's field representative. *McCarthy*, 829 So. 2d at 12-13. The Mississippi Supreme Court affirmed the jury's finding of liability because "[t]estimony demonstrated that Coho [the employer] did retain and exercise substantial control over Smith Brothers' [the independent contractor's] work, and directly supervised the down hole operation." *Id.* at 13; *see also Coho Resources, Inc. v. Chapman*, 913 So. 2d 899 (Miss. 2005).

It remains true that "[i]t is entirely possible for a business owner to control its premises, and at the same time, for an independent contractor to have unfettered control over the work it is performing on that premises." *Boyd v. Georgia-Pac. Corp.*, No. 2:06-CV-253, 2007 WL 4219187, *4 (S.D. Miss. Nov. 27, 2007) (citation omitted). Here, though, the evidence shows a factual dispute about who controlled the repair work RK Services and Richardson were performing. The available facts indicate a risk, but not necessarily a reality, that Petco could treat all of its on-site workers as employees, but then give those workers hired by its "independent contractor" the most dangerous and injury-prone assignments, in an attempt to limit its liability. It is for the jury to wade through the parties' competing claims and determine the truth of the matter.

### B.  Breach

Under Richardson's premises liability theory, if the jury finds that he should not be considered an independent contractor, he will have the status of a business invitee. *E.g.*, *McSwain v. Sys. Energy Res., Inc.*, 97 So. 3d 102, 108 (Miss. Ct. App. 2012). Landowners owe business invitees two separate duties: a duty to warn of hidden dangers and a duty to keep the premises reasonably safe. *Maddox*, 639 F.3d at 216 (quoting *Pigg v. Express Hotel Partners, LLC*, 991 So. 2d 1197, 1199-1200 (Miss. 2008)). Each will be considered in turn.

#### 1.  Duty to Warn

Petco argues that any obligation it had to warn Richardson and RK Services was satisfied as a matter of law because Richardson and RK Services were "fully aware of the issues and potential dangers associated with performing the work." Docket No. 38, at 11. It points to a safety meeting attended by the workers before the repair was conducted and Richardson's subjective knowledge that the water was hot. *Id.* at 11-13. Before the repair, for example, Richardson decided to put on

a rain slicker and also placed tape on his exposed skin. *Id.*

In his brief, Richardson highlights other workers' testimony that he was not warned of the danger, and asserts that he was not aware that exposure to this particular hot water would result in "second and third degree burns to 10% of his body." Docket No. 44, at 8, 29.

The available evidence shows that Richardson did not need to be warned of the danger. He took preventative measures – like wearing the slicker and the tape – that were not suggested by the workers around him. Docket No. 43-4, at 70-72. He has not pointed to any evidence, or even his own testimony, that a warning from Petco was necessary or would have changed what happened that day. *See Maddox*, 639 F.3d at 222 ("No warning is needed for readily apparent dangers because the owner's warning would just state the obvious."); *Green v. Allendale Planting Co.*, 954 So. 2d 1032, 1038 (Miss. 2007) ("If it's already known to the plaintiff, then the warning serves no purpose.") (brackets omitted). Summary judgment will be granted on this theory.

2. Duty to Keep Premises Reasonably Safe

What remains is Petco's duty to keep the premises reasonably safe.[5] The record evidence shows a fact dispute on that question. A jury will have to decide whether Petco's decision to utilize the vacuum procedure over its other options satisfied its duty to keep the premises reasonably safe.

For all practical purposes, that question merges with Richardson's negligence claim.[6] *See, e.g., Reed v. D&D Drilling & Exploration, Inc.*, 27 So. 3d 414, 416 (Miss. Ct. App. 2009) ("Action or inaction by the possessor (of the land) with knowledge of an individual's presence in an operation of some device is a question of negligence."); *Presswood v. Cook*, 658 So. 2d 859, 861 (Miss. 1995). Whether Petco kept its premises reasonably safe as to Richardson effectively also asks whether it used reasonable care in determining how it would conduct the repair in question. *See Maddox*, 639 F.3d at 220 (elaborating on the reasons why under Mississippi law, "[r]easonableness is central to the owner's obligation to invitees.").[7] Both questions seek to resolve whether the vacuum procedure

---

[5] Again, this duty is contingent upon a jury finding that Richardson was not an independent contractor.

[6] The parties agreed at the pretrial conference that this case could fall under premises liability or simple negligence theories.

[7] Richardson has pointed the Court to *Reed*, in which the Mississippi Court of Appeals wrote, "[s]imply put, this is not a premises liability case, and defenses to premises liability do not apply." *Reed*, 27 So. 3d at 416. With the failure to warn claim resolved, it is not clear whether Petco has any remaining defenses specific to premises

7

utilized was reasonably safe under all the circumstances.

*V.*     *Conclusion*

The defendant's motion for summary judgment is granted in part and denied in part.

**SO ORDERED**, this the 12th day of December, 2012.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

---

liability. The assumption of the risk argument identified in the parties' draft Pretrial Order, for example, may be considered by the jury pursuant to comparative negligence principles. *See Maddox*, 639 F.3d at 220 n.2.